UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LORWEN C. NAGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 09-cv-31-P-S |
| | ) |
| MIDDLEBURY EQUITY PARTNERS, | ) |
| LLC and TODD M. ENRIGHT, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the Motion for Partial Summary Judgment (Docket # 38) by Defendants Middlebury Equity Partners, LLC and Todd M. Enright. As explained herein, the Court DENIES Defendants' Motion for Partial Summary Judgment.

**I.    SUMMARY JUDGMENT STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in

its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial-worthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trial-worthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

With this standard in mind, the Court proceeds to lay out the factual narrative presented via the parties' statements of material fact.

## II.  FACTUAL BACKGROUND

In March 2004, Plaintiff Lorwen C. Nagle was introduced to Defendant Todd Enright by a friend who had funds invested with Enright and his company, Middlebury Equity Partners, LLC ("MEP"). Enright is the sole member of MEP and is the sole owner of MEP's equity interest, directly and as the beneficiary of the Todd M. Enright Family Trust. During this initial meeting, Plaintiff told Enright that she was handling her mother's financial affairs and allowed Enright to review her mother's account statement. Enright told Plaintiff that he could get her a return of ten percent per year by investing in "secure real estate backed investments." Plaintiff told Enright that she did not want her funds invested in risky ventures because she needed the money to pay for her mother's assisted living facility.

Through the next several months, Enright continued to push Plaintiff to invest with him. Enright repeatedly assured Plaintiff that her funds would be invested in secure real estate backed

investments. Enright also represented to Plaintiff that he would return her money if she ever felt uncomfortable with the investments. Based on these representations, Plaintiff transferred funds to Enright, through MEP. Between June 30, 2004 and February 10, 2005, Plaintiff entrusted $1,047,799.40 of her mother's money and $650,000 of her own money (together "the Funds") with Enright by transferring this money to MEP at Enright's direction.

In 2006, Plaintiff began questioning Enright about how the Funds were invested because she had not received any documentation or periodic reports on her investments. Only after Plaintiff began questioning Enright in 2006 did she learn that the Funds had been invested in loan participations.[1] In August 2007, after multiple requests, Plaintiff was told that the Funds had been invested in six different loans. Her mother's funds had been invested in three loans (Adare, Costello, and First Step/Hollis). Plaintiff's personal funds had been invested in five loans (Adare, Costello, Alpine Trails, Hillcrest, and ATP).

The borrowers on the Adare loan defaulted on January 1, 2005. Sometime thereafter, Defendants invested $1,100,000 of the Funds in this loan. The borrowers on the Costello loan filed for bankruptcy on October 8, 2003. Sometime thereafter, Defendants invested $497,799 of the Funds in this loan. The borrowers on the First Step/Hollis loan have never made a single payment of interest or principal on the loan, yet Defendants invested $100,000 of the Funds in this loan.

Based on these facts, Plaintiff brings claims for breach of contract, negligence, fraud, and violations of the Maine Uniform Securities Act, 32 M.R.S.A. § 16101, et seq.

---

[1] Defendants contend that Plaintiff invested the Funds pursuant to a Master Participation Agreement showing that the Funds would be invested in loan participations. However, Plaintiff denied having signed such Agreement or having knowledge of the loan participations at the time of her investment. Plaintiff contends that she only learned of the Master Participation Agreement after she invested the Funds. Because this is a summary judgment motion, the Court must take all facts in the light most favorable to the Plaintiff. For purposes of the instant motion, therefore, the Court must assume that Plaintiff did not sign and was not aware of any Master Participation Agreement prior to investing the Funds with the Defendants.

### III. DISCUSSION

Defendant Enright moves for summary judgment as to Plaintiff's breach of contract claim against him individually. Defendants Enright and MEP move for summary judgment on Plaintiff's claim under the Maine Uniform Securities Act. Each will be addressed in turn below.

#### A. Breach of Contract (Count I)

Plaintiff alleges that the Defendants breached their contracts with her by: (1) failing to invest the Funds in secure real estate backed investments; (2) defaulting on their obligation to pay interest on a monthly basis at an annual rate of ten percent; and (3) failing to return the Funds despite multiple requests. Enright argues that there is no trial-worthy issue as to Plaintiff's breach of contract claim against him individually because any alleged contract does not satisfy the statute of frauds. Enright contends that Plaintiff understood her investment to be with MEP and, therefore, any agreement between Plaintiff and Enright was in the nature of a guarantee. Enright argues that his relationship with Plaintiff therefore falls within the "Debt of Another" provision of the Maine statute of frauds and that summary judgment is appropriate because Plaintiff has failed to produce a written guarantee.

The Court takes no issue with the legal principle cited by Enright that a guarantee must be in writing to satisfy the statute of frauds. See 33 M.R.S.A. § 51 ("No action shall be maintained in any of the following cases: . . . (2) Debt of Another. To charge any person upon any special promise to answer for the debt, default or misdoings of another . . . unless the promise, contract or agreement on which such action is brought . . . is in writing and signed by the party to be charged therewith.") However, Enright's characterization of the agreement at issue here as a guarantee is contrary to the record. Construing the evidence in the light most favorable to the Plaintiff, Plaintiff has shown a direct contractual relationship between her and

Enright; there is no mention of the agreement being a guarantee for the debt of another. (Decl. of Lorwen Nagle (Docket # 43) ¶¶ 11-13.) Thus, there is a genuine issue of material fact in dispute which precludes summary judgment on the basis of the statute of frauds.

Moreover, even if the contract alleged fell within the debt of another provision of the statute of frauds, the Maine Law Court has recognized an exception "where the promisor's main purpose in making his promise is to secure some benefit for himself." Graybar Elec. Co. v. Sawyer, 485 A.2d 1384, 1389 (Me. 1985). "The focus of the 'main purpose' exception is whether the promisor's main purpose was to advance the promisor's own interests." Fitzgerald v. Hutchins, 2009 ME 115, ¶ 22. In this case, Enright is the sole member of MEP and the holder of the equity interest in MEP. Thus, Enright would certainly stand to benefit from any investment with MEP. Whether the benefit to Enright was the "main purpose" of his contract with Plaintiff is a question for the trier of fact that must be resolved at trial. See Fitzgerald, 2009 ME 115, ¶ 23.

Defendant Enright's Motion for Partial Summary Judgment is DENIED as to Plaintiff's breach of contract claim.

### B.     Violation of the Maine Uniform Securities Act (Count IV)

Defendants argue that Plaintiff and her mother were sold loan participations pursuant to a Master Participation Agreement and that these types of agreements are not ordinarily considered securities. Although loan participations may not ordinarily be considered securities, there are certainly exceptions.[2] See First Citizens Fed. Sav. & Loan v. Worthen Bank, 919 F.2d 510, 515 (9th Cir. 1998) ("A loan participation agreement may be a security if the note underlying the loan participation is a security or if the loan participation agreement itself is a security.");

---

[2] The Court notes that Maine follows the federal interpretation of "security" for purposes of the Maine Uniform Securities Act. See Bahre v. Pearl, 595 A.2d 1027, 1031 (Me. 1991).

Commercial Disc. Corp. v. Lincoln First Commercial Corp., 445 F. Supp. 1263, 1267 (S.D.N.Y. 1978) ("[A] participation in a loan may be a security, even though the underlying loan is not."). The Maine Law Court has stated:

> The term "security" has generally been broadly and flexibly construed to effectuate the remedial purposes of these acts, which is to protect the investing public from the infinite variety of speculative or fraudulent investment schemes in which the investor has no meaningful influence over the operations of the enterprise nor access to inside information from which to monitor the risks of that enterprise or to protect his investment against the manipulation or overreaching of insiders.

Bahre v. Pearl, 595 A.2d 1027, 1031 (Me. 1991). The cases illustrate that the inquiry into whether an investment qualifies as a security is highly fact intensive and requires, at a minimum, a thorough examination of the governing documents. Curiously, the Defendants have failed to make the alleged Master Participation Agreement part of the summary judgment record. Because the Court is unable to evaluate the Master Participation Agreement to determine whether it would qualify as a security under Maine law, Defendant's Motion must fail.

Moreover, Defendants' contention that Plaintiff's claim should be dismissed because an investment made pursuant to the alleged Master Participation Agreement would not qualify as a security overlooks the fact that Plaintiff has denied signing or being aware of the Master Participation Agreement at the time the Funds were invested. Viewing the facts in the light most favorable to the Plaintiff, Enright promised to invest the Funds in "secure real estate backed investments." Courts regularly hold that various types of real estate backed investments are securities. See, e.g., Wooldridge Homes, Inc. v. Bronze Tree, Inc., 558 F. Supp. 1085, 1088 (D. Colo. 1983) (investment in condominium development constituted purchase of a security). On this record, the Court finds that there is a trial-worthy issue as to whether Defendants' conduct in soliciting Plaintiff's investment violated the Maine Uniform Securities Act.

## IV.     CONCLUSION

For the reasons explained herein, the Court ORDERS that Defendants' Motion for Partial Summary Judgment (Docket # 38) is DENIED.

SO ORDERED.

                                              /s/ George Z. Singal
                                               United States District Judge

Dated this 15th day of December, 2009.